UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

EDWARD W. SEELEY )
      Petitioner )
)
v. )  Case No: CR/87-34-Z
)
DAVID L. WINN )  05-40110 JLT
      Respondent )

PETITION PURSUANT TO SECTION 28 U.S.C.
2241 AND MEMORANDUM OF LAW IN SUPPORT THEREOF

STATEMENT OF THE CASE

Comes now Petitioner, proceeding in propria, persona and in want of Counsel. On of about Febuary 1, 1988, Petitioner Seeley proceeded to trial by way of indictment and on or about Febuary 25, 1988 was found guilty on Count Three, Four, Five and Seven of the indictment and was aquitted on Count One and Count Two for the conspiracy charges. On April 12, 1988 Petitioner was sentenced to term of imprisonment totaling 35 years. Petitioner filed a timely notice of appeal. Petitioner's conviction and sentence were affirmed by the First Circuit Court of Appeals. Petitioner is still incarcerated.

## JURISDICTION OF THE COURT

This Court is vested with jurisdiction over the matters contained herein by virtue of 28 U.S.C. 2241. This statutory right under 2241 is not merely to a federal forum, but to full and fair considerations of Constitutional claims. **KAUFMAN v. UNITED STATES**, 394 U.S. 217 (1960).

Seeley seeking Habeas Corpus relief, has to sustain his contentions only by a preponderance of the evidence, and this Seeley has done. **WRIGHT v. UNITED STATES**, 624 F.2d 557 (5th Cir. 1980).

## EVIDENTIARY HEARING

Seeley contends that this Court is required to conduct a full evidentiary hearing in this matter because the facts alleged, if true, would justify relief, or where a factual dispute arises as to whether or not a Constitutional right is being denied. **PROCUNIER v. ATCHLEY**, 400 U.S. 466 (1971).

Seeley claims his allegations state substantial claims for relief. A hearing must be ordered on a petition for post-conviction relief unless, viewing petition against the record, its allegations do not state a claim for relief or are so palpably incredible or so patently frivolous as to warrant summary dismissal. **TOWNSEND v. SAIN**, 372 U.S. 293 (1963); **FONTAINE v. UNITED STATES**, 411 U.S. 213 (1973).

## MEMORANDUM OF LAW IN SUPPORT
## OF 28 U.S.C. 2241

The Supreme Court has repeatedly noted at common law, res judicata did not attach to Courts denial of Habeas relief. **SCHULP v. DELO,** 130 L.Ed. 2d 808, 829 (1998)(citation ommitted). Instead a renewed application could be made to every other Judge or Court in the realm, and each Court or Judge was bound to consider the question of the prisoner's right to a discharge independently, and not be influenced by the previous decision. Id."[A] prisoner retains an overriding interest in obtaining his release from prison if he is innocent of the charge for which he is incarcerated". Id. 832. (citations ommitted).

In "a trio of 1986 decisions handed down the same day" --- the Court had adopted the cause and prejudice standard in part because of its confidence that that standard would provide adequate protection to victims of a fundamental miscarriage of justice". **SCHULP,** at 831, 832 (citations ommitted).

"[I]n an extraordinary case where a Constitutional violation has probably resulted in the conviction of one who is actually innocent, a Federal Habeas Court may grant the Writ even in the absence of a showing of cause for the procedural default". Id. 832 (citing **MURRAY v. CARRIER,** 477 U.S. 478, 120 L.Ed. 2d 269 (1986).

However subsequently in **SAWYER v. WHITLEY,** 120 L.Ed. 2d 269 (1992). "the Court departed from Carrier's use of **'probably'** and

(3)

adopted a more exacting standard of proof to govern these claims, the Court held that a Habeas petitioner must show by clear and convincing evidence that but for a Constitutional error, no reasonable Juror would have found the Petitioner eligible for the death penalty **Id.** 833. No attempt was made in **SAWYER** to reconcile this stricter standard with **CARRIER'S** use of **"probably"** **Id.** 833. "In evaluating **SCHULPS** claim of innocence", the Supreme Court concluded that the **CARRIER** standard rather than **SAWYER'S** properly strikes that balance when the claimed injustice is that Constitutional error has resulted in the conviction of one who is actually innocent of the crime". **Id.** 834.

The **CARRIER** standard thus ensures that Petitioner's case is extraordinary while still providing Petitioner a meaningful avenue by which to avoid a manifest injustice **Id.** 833.

It is Petitioner Seeley's proposition that he is actually innocent and that his case is on all fours with the **CARRIER** gateway standard. Petitioner will show by a preponderance of the evidence that it is more likely than not that no reasonable Juror would have found Petitioner's guilt beyond a reasonable doubt **Id.** 836, **SEE ALSO: BOUSLEY v. UNITED STATES**, 523 U.S. 614, 622 (1998).

Petitioner Seeley states that the sole basis for the government's case against him was derived from double hearsay of the government's **only** witness against him concerning casual conversations between her Gail Brown and her boyfriend Bobby Wayne. Counsel for Seeley,

(4)

Mr. Barry M. Haight put the issue on record and preserved it that his client Edward W. Seeley would be denied his Sixth Amendment right to confront his accussers and denied any right to cross-examine. Trial trans. Pg. 2-2.

Ms. Browns testimony was what she had heard from her deceased boyfriend Bobby Wayne relating to alleged bank robberies. Edward W. Seeley was never placed at the scene of any crime and Ms. Brown testified to the Grand Jury that she did not have an idea what Edward W. Seeley or Jimmy's role was in the major robbery (Trial trans. Pg. 3-78).

The Honorable Judge **Rya Zobel** felt compelled to somehow admit this double hearsay under some other exception such as the co-conspirator rule. (trial trans. Pg. 2-5).

Seeley states even under this exception this evidence was still inadmissable. There must be independent evidence apart from the co-conspirator's statement establishing both the conspiracy and defendant's and declarant's participation in the conspiracy. Gail Brown testimony was the first witness in the government's case and no foundation was laid for the admission of this evidence nor any form of corroboration.

It is suggested that preliminary questions of admissability relating to the existence of a conspiracy, each must be determined by the Court rule 104(a) without reference to the statement under consideration, applying the more probably true than not true standard

(5)

of proof. Edward W. Seeley was deprived of any of these procedual safeguards in the admission of this evidence.

It is Seeley's propositions that the admission of this evidence would not have been permitted if the new rule handed down by the Supreme Court in **CRAWFORD v. WASHINGTON**, 541 U.S. 36, 74 Crl 401 (2004). The rule established by **CRAWFORD** had been the rule at the time of Petitioner Seeley's trial would have been fatal to the admission of Gail Brown's hearsay testimony.

The Trial Judge and the prosecution was aware that a mistrial would have to be declared if this evidence was excluded. The crime of conspiracy could only be submitted to the Jury only if the evidence, including the statments of co-conspirator's once admitted viewed in light most favorable to the government would fall flat on its face because no reasonable minded could conclude that Seeley was guilty of the charged offense without this evidence. (trial trans. Pg. 2-5).

Petitioner Seeley states that the rule in **CRAWFORD**, should be applied retroactiveley to his case. In **ASHLEY v. UNITED STATES**, 226 F.3d 671 (7th Cir. 2001) citing nothing in 2255 T 6(3) or 2244(b)(2)(A) precludes an application asking the District Court itself to hold that a new decision applies retroactively under the principles of **TEAGUE**....

A District Judge may determine whether a novel decision of the Supreme Court applies retroactively and thus whether a collateral attack is timely under 2244(b)(2)(A) or 2255 T 6(3) quoting **ASHLEY v. UNITED STATES**, Supra T 8 (2), T 6 (3) implies that Courts of

Appeals and District Courts may "**make**" the retroactivity decision. **TYLER** concludes that the word made in T 8(2) means "**held**" U.S. at \_\_\_\_121 S.Ct. 2438 District Courts and Appeal Courts no less than Supreme Court may issue opinons "**holding**" that a decision applies retroactively to cases on collateral review.

The jurisdictional (and precidential) scope of that holding differs but it is a holding none the less (quoting) **ASHLEY** supra; **See Also**: **BOCKTING v. BAYER,** (9th Cir.) No:0215866 2-22-05); **UNITED STATES v. SCHONEBERG,** (9th Cir. No: 03-30127, 11-17-2004); **UNITED STATES v. MCCLAIN**, (2nd Cir. No: 02-1093 07-28-2004).

In which the Seventh Circuit sister Circuits have applied Crawford retroactively on collateral review.

Seeley states it would be a fundamental miscarriage of justice to deny him the rule announced in **CRAWFORD** even though his conviction was final before **CRAWFORD** was decided.

### REASON FOR GRANTING PETITION

The Supreme Court has repeatedly and without deviation, held that the purpose of the "Confrontation Clause" is to promote accuracy **SEE E.G. CRAWFORD**, 123 S.Ct at 1370.

In **CRAWFORD** the Supreme Court held under the "Confrontation Clause" out-of-court statements are to be excluded unless the witness is found to be unavailable and the defense was provided a prior opportunity to cross-examine that person.

(7)

The Supreme Court's case law has been largely consistent with these two principles. The Court's leading earlier decisions for example involved a deceased witness prior trial testimony, **MATTOX v. UNITED STATES**, 156 U.S. 237 (1895), In allowing the statment to be admitted, they relied on the fact that the defendant had had, at the first trial, an adequate opportunity to confront the witness.

The substance of the Constitutional protection is preserved to the prisoner in the advantage he has once had of seeing the witness face to face and of subjecting him to cross-examination, this the law says, he shall under no circumstance be deprived of...**Id.** at 224.

The Supreme Court's later cases conform to **MATTOX'S** holding that prior trial or preliminary hearing testimony only if the defendant had an adequate opportunity to cross-examine. **SEE: MANCUSI v. STUBBS**, 408 U.S. 204, 213, 216 (1972);

Indeed it is Seeley's proposition that if the Supreme Court in **MATTOX** would have excluded the sworn testimony of a deceased witness if the defendant had not had a prior opportunity to cross-examine his accuser. It would seem to a much more egregious violation of Seeley's confrontation rights to allow the admission of these unsworn second-hand statments from a deceased declarant's girlfriend some four (4) years down the road, which were no more than casual conversations between two co-defendants about the declarant Bobby Waynes activities in the alleged crime. **UNITED STATES v. SNIDER**, (8th Cir. 1983); Cert denied 465 U.S. 1107, 80 L.Ed.2d 142, 104 S.Ct. 1613 (1984).

Petitioner Seeley states, that the Court allowing this inadmissable hearsay to be placed before the Jury rendered his trial fundamentally unfair and violated his Sixth Amendment right to confront his accusers. Without the admission of this testimony Petitioner's case falls squarely in the confines of the **"no evidence doctrine"** of <u>THOMPSON v. LOUSIVILLE</u>, and thus secures to an accused the most elemental of due process rights: freedom from a wholly arbitrary deprivation of liberty. <u>SEE</u>: <u>JACKSON v. VIRGINIA</u> 99 S.Ct. at 2786.

## CONCLUSION

It is Seeley's proposition that the unsworn statments of Bobby Wayne put before the Court by the recollection of his then live-in girlfriend should have been excluded and that the government had insufficient evidence to present to the Jury to proceed to trial and that he Edward W. Seeley is **"actually and factually innocent"** of the offense and demands his immediate release from prison.

Respectfully submitted,
June 28, 2005

Edward W. Seeley
Reg No: 16567-038
Federal Medical Center, Devens
P.O. Box 879   Unit P-D
Ayer, Mass   01432-0879

1    [Conference at the bench, as follows:

2    MR. HAIGHT: I just would like to put on the record,

3 please, your Honor, that certainly for today during the direct

4 examination and the cross-examination of Gail Brown, we're

5 going to be dealing with, unquestionably, hearsay evidence

6 which is being offered for the truth of the statements that are

7 coming in. I don't think anybody disputes that.

8    My position is that the Defendant Seeley, and I'm

9 aware of the Federal Rule, that the Defendant Seeley is going

10 to be denied the right to confront his accuser and going to be

11 denied the right to cross-examine.

12    The question then arises as to whether or not,

13 understanding the rules, these statements come in under some

14 exception to the hearsay rule.

15    I'm aware that Mr. Gants's position is that these

16 statements are in effect against the interest of the declarant,

17 the deceased Wayne, and that as a result, would be admissible.

18    My position is, and perhaps I'm going to try this case

19 a little bit differently, I don't know, than was previously

20 tried, but that this Court has to take into consideration that,

21 not only the person making the statement, and you're going to

22 hear evidence --

23    THE COURT: Good morning. Please be seated. I will

24 be with you in just a moment.

25    MR. HAIGHT: The character of the party who is making

1  criminal field and that he did a bank robbery. Now, that's
2  particularly true. And I alert everybody on the Fall River
3  case, there is substantial reason to believe that he may not
4  even have been there. And I intend to argue that.
5      Having all this in mind, I object to the testimony
6  that is the rankest form of hearsay and denies my client the
7  right to confront the accuser.
8      THE COURT: Well, having in mind the Government's
9  pretrial memorandum and the evidence outlined there and the
10 arguments there made, it seems to me that as an initial point
11 there are exceptions within the hearsay rule under which, at
12 least some of these statements, are admissible.
13     Whether they will stay in the end is something that
14 will have to await the development of the evidence. So that it
15 seems to me the only way I can deal with this is in a way
16 similar to the way in which I have to deal with the
17 co-conspirator statements. I will let it in, but the
18 Government is on notice that I may decide at some point, if,
19 indeed, I am sufficiently troubled about the trustworthiness of
20 this evidence, have to declare a mistrial, just as I might have
21 to declare a mistrial if there is not adequate evidence of a
22 conspiracy, such as to let those statements that are not under
23 some other exceptions come in under the co-conspirator rule.
24 And that is what I intend to do. It seems to me the only thing
25 I can do.