United States District Court
District of Massachusetts

---

Civil Action No. 05-40110-JLT

**Edward W. Seeley,**
*Petitioner*

v.

**David L. Winn,**
*Respondents*

---

## Petitioner's Response To Government's Opposition To Petition For Habeas Relief And Amendment To Petition

Edward W. Seeley, the petitioner in this matter, offers this memorandum for two purposes. First, now represented by counsel, he seeks to clarify the grounds set forth in the *pro se* petition that he previously filed with this court. Second, he wishes to respond to the government's opposition to his request for habeas relief.

### Background

As the government correctly points out, the defendant was convicted in February of 1988 of various charges based on his alleged "participation in two bank robberies, one on

1

April 1, 1983, in Lowell, Massachusetts, and the other two

weeks later in Fall River." *United States v. Seeley*, 892 F.2d 1

(1st Cir. 1989). More specifically, "he was convicted, in

essence, of having masterminded the bank robbery scheme."

*Id.*

In his appeal before the First Circuit the following

year, Seeley argued:

> that the trial court should have refused to admit as
> evidence the testimony of two witnesses who recounted
> out-of-court statements made by Robert Wayne, one of
> the bank robbers. Wayne was not available to testify
> himself, for he was found dead in May 1983, soon after
> the robbery. According to Wayne's girlfriend, Gail
> Brown, who testified at trial, Wayne said, for example,
> that he had worked for Seeley and [James] Bramble
> stealing cars, that Seeley had provided his bail when
> he was arrested for trying to steal a beer truck, that he
> repaid Seeley with the proceeds of a robbery that
> Seeley had planned, that Seeley (in March 1983) had
> provided him with a disguise and a gun for a bank
> robbery, that Seeley had planned the Lowell robbery
> for April 1 (the next day), that Seeley was keeping
> some of the proceeds from the Lowell robbery, that
> Seeley and Bramble had planned the Fall River
> robbery, which Bramble and others had carried out,
> and that Seeley wanted Wayne to move out of Brown's
> apartment because Seeley was afraid that he was
> telling Brown too much. Gail Brown added various
> important details, such as that Wayne had showed her
> the gun and disguise, that Wayne showed her money
> that he said came from the Lowell bank robbery, and
> that Wayne described the plans for the Lowell robbery
> just before it took place. According to Robert T. Brown,
> Wayne's stepfather, Wayne told him that he had
> participated in the Lowell robbery, that he had

> participated in another robbery, and that Seeley was
> the "boss", the "brains," of the robbery gang.

*Id.* at 1-2.

The First Circuit rejected the defendant's Confrontation Clause argument, holding that the hearsay statement of an unavailable declarant is admissible if it bears adequate "indicia of reliability." *Id.* at 2, quoting *Ohio v. Roberts*, 448 U.S. 56, 66 (1980). Although the challenged evidence was crucial to obtaining a conviction, because it satisfied the *Roberts* reliability test, the Court of Appeals concluded that it was properly admitted in this case. *Id.*

As will be discussed below, in *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court overruled *Roberts*, barring under the Confrontation Clause any testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant had had a prior opportunity for cross-examination. 541 U.S. at 53-54. The evidence as described above was certainly testimonial came from an unavailable witness who had not been cross-examined by the defense. Clearly, it would have been excluded had *Crawford* been in effect at the time of Seeley's trial.

The government has, however, raised two challenges to Seeley's petition. First, it contends that a petition under 28 U.S.C. § 2241 is not the appropriate vehicle for raising such a claim.  Second, it argues that *Crawford* should not be applied retroactively and that Seeley's claim therefore fails on the merits.  Seeley will address both claims below.

I.    **28 U.S.C. § 2241 Is The Appropriate Remedy For A Person In Custody To Attack The Legality Of That Detention And To Secure A Legal Determination Where The Record Demonstrates That A Motion Under 28 U.S.C. § 2255 Would Be An Inadequate Or Ineffective Remedy**

In its response and opposition, the government claims that the proper vehicle for challenging his conviction is a motion under 28 U.S.C. § 2255, not a petition under 28 U.S.C. § 2241. (Government's Response And Opposition To Edward W. Seeley's Habeas Petition, p.1, 3-4). More specifically, the government contends that challenges to the validity of his conviction should be raised under Section 2255, whereas Section 2241 addresses only challenges to the execution of a sentence. (Government's Response, p.1 ), citing *United States v. Barrett*, 178 F.3d 34, 50 n.10 (1st Cir. 1999). However, where, as here, Section 2255 does not provide an effective remedy to the petitioner, the savings

4

clause under that section is triggered, and a petition under Section 2241 becomes the appropriate means of attacking the underlying conviction.

28 U.S.C. § 2255 permits a federal prisoner to seek post conviction relief. 28 U.S.C. § 2241 allows a federal prisoner to seek a writ of habeas corpus. The First Circuit Court of Appeals has held that notwithstanding restrictions imposed by Antiterrorism and Effective Death Penalty Act (AEDPA) on the use of habeas corpus petitions by federal prisoners, habeas relief remains available for federal prisoners in limited circumstances, pursuant to the savings clause under Section 2255. Under the savings clause, a prisoner may seek habeas relief under Section 2241 if a petition for post-conviction relief would be an inadequate or ineffective remedy. See *Sustache-Rivera v. United States*, 221 F.3d 8, 12 (1st Cir. 2000) (if a petitioner's § 2255 remedy is inadequate or ineffective, then he may apply for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, the general habeas corpus statute); *United States v. Barrett*, 178 F.3d at 52. See also 28 U.S.C. §§ 2241, 2255.

5

If, as will be argued below, *Crawford* did not announce a new right but merely affirmed an enumerated fundamental right, Section 2255 likely would not apply. This is especially true where Seeley previously addressed the confrontation issue on appeal and in his previous 2255 motions. See *United States v. Seeley*, 892 F.2d 1 (1st Cir. 1989), and *United States v. Seeley*, 7 F.3d 219 (1st Cir. 1993) (Unpublished). Where the courts have not determined whether *Crawford* announced a new rule or recognized a fundamental right, and where the issue of retroactivity remains unresolved, Section 2241 remains the appropriate vehicle for addressing Seeley's claims. See *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968) (the purpose of 28 U.S.C. § 2241 is to provide an effective and speedy instrument by which judicial inquiry may be had into legality of detention of a person, but this chapter does not limit the relief that may be granted to discharge of applicant from physical custody; this chapter contemplates the possibility of relief other than immediate release from physical custody); *Peyton v. Rowe*, 391 U.S. 54, 67-68 (1968) (federal habeas corpus statute does not deny federal courts power to fashion

6

appropriate relief other than immediate release; "Since 1874, the habeas corpus statute [28 U.S.C. § 2243] has directed the courts to determine the facts and dispose of the case summarily, 'as law and justice require.'").

Indeed, Section 2241 "implements the constitutional command that the writ of habeas corpus be made available." See *Jones v. Cunningham*, 371 U.S. 236, 238 (1963), citing U.S.Const. Art. I, s 9 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.") "To determine whether habeas corpus could be used to test the legality of a given restraint on liberty, [The Supreme] Court has generally looked to common-law usages and the history of habeas corpus both in England and in this country." See *Jones v. Cunningham*, 371 U.S. at 238, citing *McNally v. Hill*, 293 U.S. 131, 136 (1934); *Ex parte Parks*, 93 U.S. 18 (1876). The essence of habeas corpus is an attack by the person in custody upon legality of that custody, and traditional function of the writ is to secure release from illegal custody. See *Preiser v. Rodriguez*, 411 U.S. 475, (1973). See also *Scaggs v. Larsen*, 396 U.S. 1206, (1969) (writ

7

of habeas corpus was designed to protect every person from being detained, restrained, or confined by any branch or agency of the government); *Johnson v. Avery*, 393 U.S. 483, (1969) (basic purpose of writ of habeas corpus is to enable those unlawfully incarcerated to obtain their freedom). It should be remembered that the writ of habeas corpus can do more than reach behind prison walls and iron bars; it is not a static, narrow, formalistic remedy; its purpose is the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty. See *Jones v. Cunningham*, 371 U.S. 236, 242 (1963), on remand 319 F.2d 1; *Peyton v. Rowe*, 391 U.S. 54, 58 (1968) (same).

## II.    **Retroactive Application Of *Crawford***

In its decision, the Court in *Crawford* failed to address whether the rule announced should be applied retroactively. Federal courts throughout the country have since struggled with the issue of retroactivity, and no consensus has thus far emerged. The First Circuit has not addressed the issue, and at present, the issue remains unresolved. While Seeley has addressed the issue of retroactivity in previous filings and will not repeat his prior arguments, that issue may

8

ultimately turn out to be a red herring. In its ruling, the Court in *Crawford* may not have been announcing a new rule but may have simply recognized a fundamental right— one that should have been recognized in Seeley's trial and in his direct appeal.  Indeed, if the right to confront witnesses is ultimately recognized as fundamental, review of his case will be absolutely required.

The right of a criminal defendant "[i]n all criminal prosecutions ... to be confronted with the witness against him", see U.S. Const. Amend. VI, is not simply a right created by the judiciary in *Crawford* but is an enumerated fundamental right, which can never be taken away. "[F]undamental rights are those that 'explicitly or implicitly [are] guaranteed by the Constitution.'" *Plyler v. Doe*, 457 U.S. 202, 232 (1982) (Blackmun, J. concurring), quoting *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 33-34 (1973). "Fundamental rights" are those privileges "that are objectively, and deeply rooted in this Nation's history and tradition, so rooted in the traditions and conscience of our people as to be ranked as fundamental and implicit in the concept of ordered liberty, such that neither liberty nor

9

justice would exist if they were sacrificed." See *Washington v. Glucksberg*, 521 U.S. 702, 720-721 (1997).

Historically, the Court followed a path that it ultimately recognized as misguided, eroding the right to confront adverse witnesses. By 1970 the fundamental right of witness confrontation in a criminal proceeding had been so eroded that the Court wrote that the "mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that 'the trier of fact (has) a satisfactory basis for evaluating the truth of the prior statement.'" *Dutton v. Evans*, 400 U.S. 74, (1970), quoting *California v. Green*, 399 U.S. 149, 161 (1970). A decade later the Court wrote that wrote that "[i]f one were to read [the] language [of the Sixth Amendment] literally, it would require, on objection, the exclusion of any statement made by a declarant not present at trial[,]" which the Court again "rejected as unintended and too extreme." *Ohio v. Roberts*, 448 U.S. 56, 63 (1980).

As noted above, the Court in *Crawford* rejected the judicial erosion of the Confrontation Clause as exemplified

10

by *Roberts*, instead adopting a literal reading of the text of the Constitution. In doing so, the Court did not announce a new rule and did not recognize a new right. While the pleadings filed by both parties address terms such as retroactivity and "new" rights, it is important to distinguish between a right recognized for the first time by the judiciary and one that is deemed fundamental. (Petition Pursuant to § 2241, p.6).

Under this analysis, the government is correct that *Crawford* does not announce a new rule that should be applied retroactively. However, if the right to confront witnesses is deemed to be fundamental, it should not have been taken away from Seeley by judicial fiat but was a right he should have enjoyed at the time of his trial and appeal. While Seeley recognized the applicability of that right at trial and in post-conviction proceedings, the courts did not. In effect, that right was suppressed. The Eighth Circuit once wrote that "[a]lthough a law or rule be fair and just in appearance, yet if it is applied and administered by public authority with an evil eye and an oppressive hand, so as to deprive a person of his fundamental rights, it cannot be

11

sustained." *Whitfield v. Hanges*, 222 F. 745, 751 (8th Cir. 1915). Here, decisions of the Court deprived him of a fundamental right, and significantly, the deprivation of that right almost certainly resulted in his conviction in circumstances where he otherwise would have been acquitted. The out-of-court statements were powerful evidence that the defendant simply could not refute. Where Seeley was deprived of his fundamental rights and where that deprivation virtually guaranteed his conviction, "neither liberty nor justice" existed at his trial. See *Washington v. Glucksberg*, 521 U.S. at 720-721. This court can and should address his petition for relief.

## III.  Conclusion

Based on the authorities and reasons set forth above, as well as those in his previous filings with this court, the petitioner requests a hearing on this matter and that after such hearing that he be granted habeas relief.

Edward W. Seeley,
*By his attorneys,*

Dana Alan Curhan
B.B.O. # 544250

Brad P. Bennion
B.B.O. # 661222
101 Arch Street
Suite 305
Boston, Massachusetts 02110
(617) 261-3800

13

United States District Court
District of Massachusetts

_____

Civil Action No. 05-40110-JLT

**Edward W. Seeley,**
*Petitioner*

v.

**David L. Winn,**
*Respondents*

_____

## Certificate of Service

I, Dana Alan Curhan, counsel for the petitioner herein, certify that I served a copy of the forgoing "Petitioner's Response To Government's Opposition To Petition For Habeas Relief And Amendment To Petition" and supporting documents by sending them first class mail, postage prepaid to:

Brian T. Kelly, A.U.S.A.
United States Courthouse
One Courthouse Way
Boston, MA 02210

_____
Dana Alan Curhan
B.B.O. # 544250
101 Arch Street
Suite 305
Boston, Massachusetts 02110
(617) 261-3800